[Civ. No. 23804. Second Dist., Div. One. Nov. 20, 1959.]

HOLLENBECK LODGE (486) I.O.O.F. (a Corporation), Respondent, v. WILSHIRE BOULEVARD TEMPLE (Congregation B'nai B'rith) (a Corporation), Appellant.

J. Robert Arkush for Appellant.

Philip M. Gilbert for Respondent.

SCOTT (Robert H.), J. pro tem.*—Defendant appeals from an adverse judgment in an action for declaratory relief and injunction.

In August of 1945, defendant corporation, as owner of land known as Home of Peace Cemetery, entered into a contract with plaintiff for sale to the latter of 84 graves for the total sum of $4,200, to be acquired and paid for at the rate of at least 17 graves per year, or an annual total of $850. Title to the property was not to be acquired by plaintiff but the right of interment only, with fee remaining in defendant subject only to the right of purchaser to exclusive use for burial purpose.

From 1945, and for a period of nine years, no charge was made to plaintiff or to anyone obtaining a burial site from it, for cost of opening and closing the grave. In August of 1954, defendant for the first time gave notice to plaintiff by letter that thereafter a fee of $50 would be charged at time of burial for opening and closing each grave. Plaintiff verbally protested to defendant but was informed that although plaintiff corporation would not be subjected to this charge the family or estate of a deceased interred in one of these burial sites would be required to pay it.

The controversy between the parties as to the right of defendant to impose this $50 charge for opening and closing each grave remained unsettled and in October of 1957, plaintiff brought this action to obtain a judicial declaration of the rights of the parties under the contract and to enjoin defendant from demanding payment of this charge from the family or estate of a deceased who should be buried in one of these

*Assigned by Chairman of Judicial Council.

472

graves. The trial court held that defendant had no right to make this charge and enjoined it from so doing. From this determination defendant has appealed.

Two provisions in the contract are emphasized by the parties as bearing on their respective rights. The first, contained in the third paragraph, required that any instrument issued by plaintiff to a person acquiring a grave "shall include, among other provisions, a clause to the effect that such sale or conveyance is made subject to the rules and regulations of the Home of Peace Cemetery now in effect, and such rules and regulations that may be added any time in the future by First Party [defendant]." In the fifth paragraph plaintiff agreed to comply with such rules. The second provision contained in the seventh paragraph sets out: "It is understood and agreed that the opening of the graves hereinabove referred to shall be subject to the direction of First Party [defendant] *at no cost or expense to Second Party* [plaintiff]." (Emphasis added.)

The trial court found that plaintiff "furnish[ed] . . . these graves to deceased members of the plaintiff corporation and their families." The president of plaintiff corporation testified that according to its by-laws a grave free of any charges was promised to each of such members. The findings further recited that many of the 84 graves are still unused and unoccupied.

As a conclusion of law " [i]t is declared that the defendant has no right to charge plaintiff, the deceased members of plaintiff corporation, the estate of said deceased members, or the family of deceased members for the opening of the graves purchased by the plaintiff corporation from the defendant corporation."

■ These determinations of the trial court, whether they are called "findings of fact" or "conclusions of law," are available to plaintiff in support of the judgment (*Petersen* v. *Cloverdale Egg Farms*, 161 Cal.App.2d 792, 797 [327 P.2d 127] ; 48 Cal.Jur.2d 307).

On appeal, defendant contends that (1) the judgment is not supported by the findings; (2) the trial court failed to make findings on material issues; (3) the complaint does not state a cause of action for declaratory relief; (4) the complaint does not state a cause of action for injunctive relief.

The judgment states: "It is declared that the defendant has no right to charge plaintiff, the deceased members of

plaintiff corporation, the estate of said deceased members, or the family of deceased members for the opening of the graves purchased by the plaintiff corporation from the defendant corporation'' and enjoined defendant from making such charge.

 Defendant's first contention concerning the adequacy of the findings is expanded by it, in its argument on appeal, to include a challenge to the sufficiency of the evidence by declaring that ''no extrinsic evidence of any kind was offered by either party which could in any way aid the trial court in determining the true meaning and intent of the parties as to the right of defendant to impose a charge for the opening or closing of the graves encompassed in the contract.'' It therefore asserts that ''[t]his [appellate] court must accordingly examine the contract sued upon, determine its meaning and application and adjudicate the rights and liabilities thereunder without reference to the construction placed upon the contract by the trial court.''

 It is settled in this state that an appellate court is not bound by a trial court's construction of a contract or other written instrument based solely upon the terms of the instrument. (*Trubowitch* v. *Riverbank Canning Co.*, 30 Cal.2d 335, 339 [182 P.2d 182].) Where the record includes no evidence offered or received for the purpose of showing the intention of the parties as to their agreement, the construction of the contract by the trial court presents a question of law which the appellate court must determine, but the practical interpretation of a contract by the parties constitutes cogent evidence of intent. (*Moore* v. *Wood*, 26 Cal.2d 621, 629 [160 P.2d 772]; *Roy* v. *Salisbury*, 21 Cal.2d 176, 184 [130 P.2d 706].)

This practical interpretation may properly be regarded as furnishing one of the most reliable means of arriving at the intention of the parties when they executed the contract. (*Commercial Discount Co.* v. *Cowen*, 18 Cal.2d 610, 615 [116 P.2d 599].)

It is to be assumed that the parties to this contract best knew what was meant by its terms, and were least liable to be mistaken as to its intention; that each party was alert to its own interests and insistent on its rights and that whatever was done by the parties at the time of and following the execution of the contract was done under its terms as they understood and intended it should be. ''Parties are

far less liable to have been mistaken as to the intention of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it. . . . In its execution, every executory contract requires more or less of a practical construction to be given it by the parties, and when this has been given, the law, in any subsequent litigation which involves the construction of the contract, adopts the practical construction of the parties as the true construction, and as the safest rule to be applied in the solution of the difficulty." (*Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751, 762 [128 P.2d 665] ; *Mitau* v. *Roddan*, 149 Cal. 1 [84 P. 145, 6 L.R.A. N.S. 275] ; *Johnston* v. *Landucci*, 21 Cal.2d 63 [130 P.2d 405, 148 A.L.R. 1355] ; *Woodbine* v. *Van Horn*, 29 Cal.2d 95 [173 P.2d 17].)

 Defendant does not complain that plaintiff failed to pay for all of the graves which it purchased, at the required minimum rate of 17 per year, and we note that the contract required this payment of "[t]he sum of Fifty Dollars ($50.00) for each grave *as and when the same is used for the burial of a deceased person.*" (Emphasis added.) The right of defendant to receive and retain this payment for each grave was therefore based upon the use of such grave for the burial of a deceased person and a necessary incident of such use was the opening and closing of the grave. The trial court might properly determine that having received such payment from plaintiff, defendant could not rightfully seek to impose on the family or estate of a deceased occupant of a grave a further charge for the same service.

The answer of defendant alleges that it has been its uniform custom to make a charge for the opening and closing of any grave, that it is proper to make such charge and that it so informed plaintiff in August of 1954 (nine years after the execution of the contract).

It is apparent that at the time of the execution of the contract and for nine years thereafter defendant made no claim that it could make any charge against plaintiff, its members or their families or estates for opening and closing these graves purchased by plaintiff.

Defendant could not justly claim that this uniform charge was a new rule or regulation because it predated the contract,

and it could not under the guise of an amendment to such rules or regulations claim a right to impose such a burden upon plaintiff or the others.

The judgment has ample support in the findings which cover the contract and the conduct of the parties relating thereto. Defendant knew that plaintiff assumed corporate form as a matter of legal convenience for a fraternal order consisting of individual members who would join, enjoy the fellowship of the order and, in time, pass on and perhaps need burial in defendant's cemetery. The identity of the corporation with its members was of course apparent to defendant and it was therefore aware that a benefit or detriment to the one under this contract would apply also to the other. There was no sufficient showing that plaintiff sold or intended to sell these graves to persons other than members or their families.

The affirmative defense that the action was barred by the statute of limitations and, in particular, by subdivision 1 of section 337 of the Code of Civil Procedure finds no sufficient support in the record to require discussion.

A second affirmative defense contains the following language: "This answering defendant alleges that plaintiff's Complaint is barred by laches." It cannot rely upon a claim of laches inasmuch as it failed to plead facts giving rise to that defense and there is nothing on the face of the complaint to indicate that any such facts existed. (*Reed* v. *Norman,* 41 Cal.2d 17, 21-22 [256 P.2d 930].) As to this defense the record is likewise deficient in evidentiary support.

Additional findings were unnecesary and if made would furnish no support to defendant's position.

Notwithstanding its failure at the pretrial hearings, at the trial or on motion for new trial to urge the objection that the complaint does not state a cause of action for declaratory relief under the Code of Civil Procedure, section 1060, defendant now presents it for our consideration. It chooses to ignore the averments in its own answer which not only furnish support for plaintiff's complaint alleging the contract and the existence of a controversy suitable for such judicial evaluation, but also declare "defendant admits a dispute has arisen between plaintiff and defendant concerning the said contract" and then set out its own contentions. This objection is not well taken. (*Ralphs etc. Co.* v. *Amalgamated Meat etc. Workmen,* 98 Cal.App.2d 539 [220 P.2d 802].)

■ "A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court." (*Maguire* v. *Hibernia Sav. & Loan Soc.*, 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062].)

■ Defendant's suggestion at this time is that a judgment should not include an order enjoining it from doing that which the court had just determined it had no right to do. This order imposes no added burden on defendant and appears to be an equitable means of safeguarding the rights of plaintiff corporation and its members, and their families and estates which the court had just ascertained and declared.

■ Both declaratory and coercive relief may be granted in the same action. ■ An action for declaratory relief is a suit in equity. ■ The jurisdiction of a court of equity to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties and it has power to enforce its decrees as a necessary incident to its jurisdiction. (*Mills* v. *Mills*, 147 Cal.App.2d 107, 116 [305 P.2d 61], and cases therein cited.)

Judgment affirmed.

Wood, P. J., and Lillie, J., concurred.